CASE 69—INDICTMENT—November 24, 1883.

# Bill Ike McClure v. The Commonwealth.

### APPEAL FROM HARDIN CIRCUIT COURT.

1 Appellant, a boy under fourteen years of age, indicted for a felony, was entitled to have the court, of its own motion, to exclude evidence of the bad character of his elder brother on the trial.

2. The court should, of its own motion, have excluded proof that appellant's mother kept a house of ill-fame.

3. The court should not have permitted the attorney for the Commonwealth, in his argument to the jury, to speak of other persons not on trial having been acquitted; that Wortham's house had been fired by them, &c.

4. Instruction No. 6, which tells the jury that if appellant broke into the store, as alleged, but did so, at the request of another, and, in consequence of youth or mental infirmity, he did not understand the character of the act he was committing, they should find for defendant, should have been given.

Appellant was entitled to an instruction upon insanity as well as the presumption in law in his favor, based upon his age. The proof authorized it.

It is the duty of a court before whom a person like appellant is tried, to see that neither incompetent evidence is given against him, nor that any improper instruction is given.

J. P. HOBSON AND SAMUEL DUNCAN FOR APPELLANT.

It is clearly shown that appellant is under fourteen years of age, and not of sound mind.

Being under fourteen years of age, the evidence of that nature, which is to supply age, ought to be strong and clear beyond all doubt and contradiction. (4 Bl. Com., 23.)

The instructions are misleading.

P. W. HARDIN, ATTORNEY GENERAL, FOR APPELLEE.

The whole case shows that appellant, although under fourteen, knew the criminal character of the act he committed. With such proof, there can be no presumption of incapacity from want of age.

CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT.

The appellant, Bill Ike McClure, and Jo. Woosley, were indicted, tried, and sentenced to the penitentiary for one year for the offense of breaking into a store in the night time, with the alleged "intent to commit the felony of grand larceny."

It appears from the record that both of them prayed an appeal to this court, but, for some unexplained reason, Jo.'s counsel withdrew his prayer for an appeal, and consequently only one of these children is before us asking a reversal of that sentence.

The appellant was between thirteen and fourteen years old, and Jo. was between twelve and thirteen years old when the breaking took place. It appears that Jo. had a grown brother, and that he wanted some pistols and cartridges which were in the store, and got these two little boys to go in and get them for him, and it is quite likely, from his character, that he is the one who did the boring and breaking necessary to let them into the store.

It was a general store, where money was kept in the drawer, tobacco, etc., on the shelves, and jewelry and pistols in the show-case. They did not touch the jewelry and money, which are generally the most tempting to a real thief. The only things they took were the pistols and cartridges, and a piece or two of tobacco. These facts do not exhibit a voluntary robbery, with full knowledge of the character of the offense, and the responsibility and seriousness belonging to its commission. These little boys were made the dupes and instruments of an older head, but they should not be made the scape-goat of his crime.

They were tried jointly, and it does not affirmatively appear that they had an attorney present and watching their interest during the whole of the trial, for two things occurred which he certainly would have objected to had he been present when they were done. But in his absence, or failure to oppose all illegal action by the Commonwealth's attorney, it was the court's duty, of its own motion, without objection or exception from any one, to protect these chil-

dren from all illegal proceedings. The court permitted proof of the bad character of Fred. Woosley, the elder brother above mentioned, who was a man grown; that he was a fugitive from justice, and that their mother keeps a house of ill-fame, and that Jo. lived with her. There is nothing more natural than for a boy of his age to live with his mother, no matter what she does; and there is no more illegal proceeding than to try the appellant by the character of Jo.'s mother, or either one of them by the character of Fred. or the mother, for, even upon the trial of either of the latter upon such a charge as this, their characters could not be legally proven by the Commonwealth against their objection.

It also appears from the record that, while their attorney was absent the Commonwealth's attorney during his speech "stated to the jury that Bird Skaggs had been acquitted last Saturday in this court, and that night James S. Wortham's house was fired and burned by him; that *he* (the Commonwealth's attorney) *was not* afraid to live in the community; that he could protect himself, and, if *his* house burned, *he* could build another; that Bird Skaggs was a bad boy (about eighteen years old), and so were the defendants in this case, and, if released, they would do something bad just like Bird had done, and that the community ought to be protected; that all the people in it could not protect themselves." This speech was permitted by the court to be made in the concluding argument against two little boys from whose tender age the law presumes they are not criminally responsible, and that presumption prevails until the evidence clearly establishes that they understood the nature of the act charged and its consequences.

Blackstone (p. 23, 4th book) says "the evidence of malice which is to supply age ought to be strong and clear be-

yond all doubt and contradiction;" and this, we think, should be the *quantum* of evidence where felonious intent is sought to be proven in rebuttal of the presumption of *doli incapax*, which, in this enlightened and humane country, universally exists in behalf of infants under fourteen years old.

The 6th instruction asked by appellant's counsel, with instructions Nos. 1 and 2, which were given, and the qualifications as to the degree of evidence and insanity indicated in this opinion, would have presented the law applicable to the peculiar facts of this case, and should have been given to the jury. Instruction 6 substantially tells the jury if the defendants broke into the store, as charged, but did so at the request of another, and in consequence of youth or mental infirmity, not perceiving the wicked character of the act, or not knowing their responsibility therefor, they should acquit them of the felony. It was error to refuse this instruction, which was not substantially given in any other form to the jury.

This is not all. The evidence clearly preponderates to the conclusion that the appellant was not of sound mind. He would drop down on the sidewalk or platform whenever sleep came upon him, and there, like the waif that he was, sleep the sleep of the innocent or unconscious, under no guard but the All-seeing Eye which watched over him. At home, if he had what might be termed a home, in the purer sense of that noble word, he would lie down upon the hearthstone or floor and take his sleep, instead of repairing to such beds as his parents had. He would fly into a passion in an instant, without provocation, and straightway become affectionate and fondling. But no instruction upon this feature of his case was given, as it should have been, *sua sponte*, by the court, on account of his tender years, and

the duty of the court to see to it that his rights were carefully guarded and protected. He was entitled to an instruction on insanity as well as on the presumption of law in his favor, based on his age. It would be strange law, indeed, if the courts were required to protect an infant when only his property was at stake, yet leave him to the tender mercies of a Commonwealth's attorney who illegally traveled out of the record in search of arguments to secure his conviction for a crime which would consign his person to a dungeon, his name to infamy, and his young life to associations which would blur and distort it forever. This is not law in this country, and we can not give the seal of our approval to such a judgment so obtained, although no objections or exceptions were taken to the conduct of the Commonwealth's attorney or the admission of the illegal evidence. (Willett v. Commonwealth, 13 Bush.)

Wherefore, the judgment is reversed and this cause remanded, with directions to grant appellant a new trial.