RENDERED:  MAY 21, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0749-MR

OSCAR INGRAM                                                         APPELLANT

APPEAL FROM FULTON CIRCUIT COURT
v.          HONORABLE TIMOTHY A. LANGFORD, JUDGE
ACTION NO. 19-CR-00085

COMMONWEALTH OF KENTUCKY                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, DIXON, AND L. THOMPSON, JUDGES.

ACREE, JUDGE:  Oscar Ingram appeals the Fulton Circuit Court's November 27, 2019 Judgment and Sentence.  He argues the circuit court erred by:  (1) denying him a directed verdict; and (2) ordering jail-fee reimbursement despite his indigent status.  Additionally, he contends the prosecutor made inappropriate comments during *voir dire* that affected the fairness of his trial.  Finding no error, we affirm.

# BACKGROUND

On June 22, 2019, police officer Austin Matheny witnessed Ingram turn left in his vehicle without a proper signal. Matheny attempted to stop Ingram. Instead of complying with the officer's lawful command to pull over, Ingram fled. After a chase, Ingram pulled into a residential driveway, left his vehicle, and ran into a wooded area behind the property. While fleeing police, Ingram tripped over some logs. This allowed Matheny to catch up, and he arrested Ingram.

Ingram told Matheny he ran because he had a suspended drivers' license. Ingram consented to a search of his car, which yielded no evidence. However, two more officers arrived on scene with a canine unit. The canine alerted to a hat near where Ingram tripped and then to drugs nearby. Near the log that tripped up Ingram, Officers recovered a baggie containing 23.51 grams of methamphetamine covered by a $10 bill.

Based on this evidence, a Fulton County grand jury indicted Ingram on a variety of charges: (1) first-degree trafficking in a controlled substance; (2) tampering with physical evidence; (3) second-degree fleeing or evading police in a motor vehicle; (4) second-degree fleeing or evading police on foot; (5) reckless driving; (6) operating a motor vehicle on a suspended license; and (7) two counts of improper signaling. At trial, Ingram chose not to testify, nor did he put on any defense. Instead, he argued there was no witness who saw him discard the

contraband found near where he fell, he was not seen wearing a hat, the baggie was not tested for fingerprints or DNA, and there was an absence of other evidence that the baggie of methamphetamine belonged to him. He claimed it was nothing more than coincidence that he tripped, fell, and was arrested near a valuable cache of illegal drugs.

The jury was not persuaded by Ingram's argument and convicted him on all charges. The jury recommended a sentence of 13 years' imprisonment, and the circuit court agreed. Additionally, the circuit court ordered Ingram to reimburse the Fulton County Jail at a rate of $20 per day for his 157-day stay prior to sentencing in accordance with a jail fee ordinance in the county. This appeal followed.

## **ANALYSIS**

On appeal, Ingram argues three substantive issues: (1) he was entitled to a directed verdict on trafficking and tampering charges; (2) the imposition of a jail reimbursement fee is illegal; and (3) the prosecutor made inappropriate remarks during *voir dire* that affected the fairness of the trial. We take each issue, in turn.

### *Directed Verdict*

Ingram argues his proximity to drugs cannot alone support factfinding that he possessed it. *See Haney v. Commonwealth*, 500 S.W.3d 833, 835 (Ky.

App. 2016). He also argues now, though apparently not at trial, that even presuming he possessed the drugs, the quantity was not sufficient to establish that he intended to traffic them rather than to personally consume more than 23½ grams of methamphetamine. We are not persuaded.

First, proximity was not the sole circumstance to support an inference Ingram possessed the drugs. Officers testified that the location both where Ingram fell and the drugs were found was not a traveled walkway or path. It was a wooded area with no indication that any other person had been there. There was testimony that although there had been a recent rain, the $10 bill and baggie were dry. "Even in a criminal case a jury may properly believe that which the evidence fairly indicates to have been reasonably probable." *Ralya v. Commonwealth*, 495 S.W.2d 506, 507 (Ky. 1973). Ingram offers no alternative, reasonably probable explanation as to how the drugs were found in that place and in that condition. "When the evidence, even though it be circumstantial, affords fair and reasonable ground upon which the verdict of a jury might be rested, the case should go to the jury." *Cissell v. Commonwealth*, 419 S.W.2d 555, 557 (Ky. 1967) (citation and internal quotation marks omitted). It properly went to the jury in this case.

Regardless whether Ingram waived the argument that the quantity of methamphetamine was insufficient to support the charge of trafficking, intent to traffic may be inferred where the quantity of drugs is "inconsistent with personal

use" or accompanied by circumstances that are inconsistent with personal use. *Dawson v. Commonwealth*, 756 S.W.2d 935, 936 (Ky. 1988) (citing *Whisman v. Commonwealth*, 667 S.W.2d 394 (Ky. App. 1984)). In *Jones v. Commonwealth*, this Court reviewed the denial of a directed verdict in a case in which the defendant "was found in constructive possession of more than three grams of methamphamine [sic]," and concluded that, "[a]lthough the evidence of intent to traffic was not overwhelming in this case, … the trial court did not clearly err by denying Jones's motion for directed verdict on this issue." 567 S.W.3d 922, 926 (Ky. App. 2019). In light of *Jones*, we cannot say that constructive possession of 23½ grams of methamphetamine is not enough to overcome a directed verdict challenge to the charge of trafficking.

*Jail Reimbursement Fee*

At sentencing, the circuit court ordered Ingram to reimburse the Fulton County Jail $20 a day for his 157-day stay prior to sentencing. This amount totals $3,140. KRS[1] 441.265(1) allows a court to order reimbursement to a county jail for up to $50 a day. However, Ingram argues the statute requires a county-established reimbursement policy to be in place and mandates an exception in cases where good cause is shown. Ingram argues there was not such a policy in place.

---

[1] Kentucky Revised Statutes.

Ingram concedes he failed to preserve this error. In accordance with *Montgomery v. Commonwealth*, 819 S.W.2d 713 (Ky. 1991), we conclude this alleged sentencing error is procedural nature. As such, because Ingram requests it, we shall review the error pursuant to RCr[2] 10.26 for manifest injustice.

According to the sentencing order, the circuit court was "advised that Fulton County has adopted a jail fee ordinance pursuant to applicable statute and has established a jail fee of $20.00 per day for inmates housed in the Fulton County Detention Center, and being otherwise sufficiently advised" ordered that Ingram be responsible for such reimbursement. (Trial Record (TR) at 160).

Ingram questions whether the information upon which the circuit court relied was true. That answer could have been fleshed out if he had raised the issue before the circuit court. *See* RCr 9.22. This Court, however, will do no factfinding.

The proper inquiry before this Court is whether the order is manifestly unjust. Ingram does not address that issue. He merely says he is going to prison for 13 years and is now and will remain indigent. That is not enough for finding of manifest injustice.

The Kentucky Supreme Court held that indigent status, specifically being classified as a "needy person" who qualified for appointment of counsel, is

---

[2] Kentucky Rules of Criminal Procedure.

not enough to waive a jail fee. *Jones v. Commonwealth*, 382 S.W.3d 22, 33 (Ky. 2011). The Supreme Court chose to "not construe the jail reimbursement fee assessed under KRS 441.265(1) to be among the 'costs' referred to in KRS 31.110(1)(b)." *Id.* Ingram's indigency does not make the imposition of the jail reimbursement fee manifestly unjust.

*Prosecutor's Comments*

Ingram also contends the prosecutor made inappropriate comments during *voir dire* when he said:

> Methamphetamine is a synthetic drug not found in nature, has to be made. And the story I always tell even though it had been around for about 40 years when it happened— Hitler used it in World War II because he wanted troops alert to fight longer. Didn't matter his young soldiers were getting slaughtered or having an addiction problem because he didn't care. He just wanted them fighting.

(Video Record (VR) at 11/4/2019 10:03:25). Ingram acknowledges this alleged error is unpreserved. Regardless, Ingram asks us to review this comment under RCr 10.26 and find it inappropriate because the prosecutor compared Ingram to Hitler.

For unpreserved issues of misconduct, the prosecutor's conduct must be flagrant. To determine if a comment is flagrant, courts must use a four-part test: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or

accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Dickerson v. Commonwealth*, 485 S.W.3d 310, 329 (Ky. 2016). Applying this test, we are unpersuaded by Ingram's argument.

The prosecutor did not mislead the jury or prejudice Ingram. The anecdote, an isolated historical fact, may have insinuated the universally agreed upon evils of Hitler and methamphetamine. But any linkage to Ingram does not even rise to the level of tenuous. The fairness and integrity of the trial was not compromised by this comment during *voir dire*. Ingram did not suffer manifest injustice.

## CONCLUSION

For the foregoing reasons, the Fulton Circuit Court's November 27, 2019 Judgment and Sentence is affirmed.

THOMPSON, L., JUDGE, CONCURS.

DIXON, JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANT:

Kayla Deatherage
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Aspen Roberts
Assistant Attorney General
Frankfort, Kentucky